No. 31,916

Elizabeth Creighton, *Appellee*, v. T. M. Dorsey and Minnie P. Dorsey, His Wife, *Appellants*.

(38 P. 2d 40)

Opinion filed December 8, 1934.

*Jay T. Botts,* of Coldwater, for the appellants.

*C. H. Brooks, Willard Brooks, Howard T. Fleeson, Fred W. Aley, Carl G. Tebbe, Wayne Coulson,* all of Wichita, and *H. R. Daigh,* of Ashland, for the appellee.

The opinion of the court was delivered by

Thiele, J.: This is an appeal from a judgment quieting title.

Appellants were the owners of a half-section of land mortgaged for $6,000. They were also indebted to the Protection State Bank in the sum of $5,265.31. In October, 1932, the mortgagee was threatening foreclosure and the bank was pressing for payment, and an arrangement, the terms of which are disputed, was made between appellants and the bank. There is no dispute, however, that on October 26, 1932, the appellants conveyed the land to the bank by a general warranty deed, subject to the $6,000 mortgage, and that the deed contained no reservations by grantors of title or of any interest

in the land. At the same time the bank addressed a letter and delivered it to the appellant, T. M. Dorsey, in which receipt of the deed was acknowledged and that it was taken in payment of the sum of $5,265.31 due and owing to the bank, leaving a balance due and owing to the bank of $215, which it agreed to carry in the form of a note due not later than July 15, 1933. On the evening of the same day the officers of the bank approached the plaintiff and endeavored to sell her the land and told her they had a deed to it. The plaintiff lived about three and one-half miles from the land in question and was familiar with it. After discussion as to price and her own financial condition, with which the bank officers were familiar, as she and her husband had for some time been customers of the bank, she agreed to buy the land subject to the mortgage of $6,000, for $6,000, or a total price for the land of $12,000. Plaintiff held a certificate of deposit on said bank in the sum of $4,226.46, which with other papers she left at the bank for safe-keeping. She authorized the bank to cash this certificate and use the principal and the interest amounting to $113.15 as part payment, and she also turned in two notes which she had previously purchased from the bank, one for $206.50 on which there was $4.81 interest due, and one on which there was a balance of $1,451.75. The proper officers of the bank made a deed to her and told her of it. In January, 1933, as nearly as we can tell from the abstracts, the deeds were recorded. The bank paid the unpaid taxes and interest due on the mortgage at the time the plaintiff purchased the land. In March the plaintiff leased the land, but nothing was to be done under that lease until the land was to be prepared for wheat. In June, 1933, when her tenant started to plow, the appellants made claims which are hereafter referred to, and this action followed.

Plaintiff's petition stated a cause of action to quiet title, and a second cause of action having to do with the ownership of the wheat and the spring crop. As the second cause was dismissed by the court, and there is no appeal on account thereof, it will not be noticed further. Defendants answered by a general denial, and filed a cross petition setting up their version of the transactions with the Protection State Bank and claiming that their agreement at the time the deed was made by them was that they should have the right for two years to redeem the land upon payment by them to the bank and in the meantime they were to have possession, and that if such provisions were not in the deed made by them the same

were omitted by mutual mistake or by design of the cashier of the bank. Allegations of possession and planting of crops were made, and it was further alleged that the consideration passing from the plaintiff to the bank was by way of credit on a preëxisting debt, and that any other consideration was given after plaintiffs were aware of defendants' rights; that Waters, cashier, and the bank were plaintiff's agents in the purchase and handling of said land, and that the bank was a proper and necessary party. The prayer was that the deed be reformed to set out the agreement between the bank and the defendants; that plaintiff's rights be held inferior to those of defendants; that plaintiff take nothing on her second cause of action, and that the bank be made a party defendant. Plaintiff filed a verified general denial, but admitted that defendants delivered their deed to the bank, and that there was wheat growing on October 26, 1932, and that Waters was then cashier of the bank.

The bank was made a party defendant, and answered admitting the first cause of action of plaintiff's petition and denying all parts of defendants' cross petition inconsistent therewith and set up matters pertaining to its good faith.

At the trial plaintiff offered evidence about her purchase of the land, about her leasing it and that she did not know of defendants' claims until in June, 1933. When the defendants were presenting their case, a demand for a jury was made by them, the plaintiff objected that the bank was not a proper party and the bank moved that it be dismissed as a party. The court dismissed the second cause of action, which pertained to ownership of wheat, without prejudice, and held that the defendants must show either that plaintiff was a purchaser with notice or failure of consideration before they could sustain their action to reform the deed as to the bank. It may here be noted that there was no testimony that plaintiff knew of defendants' claims until June, 1933. The matter of failure of consideration is hereafter treated. As the trial proceeded the court sustained objection to testimony showing defendants had sown wheat on the land in October, 1932, that the land was partially inclosed and that cattle were pastured thereon during the winter of 1932-1933. Objections were also sustained to an offer to prove the transaction between the defendants and the bank, there being no claim that plaintiff was aware of defendants' claim at the time of her purchase. Defendants produced a witness who testified that the note dated November 27, 1929, for $1,793.90, on which a payment of

$502.58 was made June 2, 1930, was of small value on October 26, 1932. As to the other note of two hundred odd dollars, he testified only that he had known the maker some six or eight years previously and his financial condition was not then good. On cross-examination, he stated he based his opinion as to the large note on the collateral back of the note or the property the maker had, and then admitted he didn't know what property the maker had, but stated that the note was too long past due. Plaintiff's demurrer to the defendants' evidence was sustained on the ground it did not prove a defense. The bank's motion to be dismissed as a party was allowed. On the hearing of defendants' motion for a new trial a showing was made as to the evidence offered and refused, and, after consideration, the motion was denied, and in due time defendants perfected their appeal. Appellants present four contentions, which will be noticed in order.

They contend first that a purchaser must examine the recorded deed to his grantor or, where it has not been recorded, the deed itself, to see the condition of the deed and title before he can ignore possession of the premises by the makers of the deed to his grantor. It appears here that appellants' deed to the bank was a general warranty deed conveying the property subject to the $6,000 mortgage, free and clear of other encumbrance and without any reservation by the appellants of any interest in the land. It is true that appellee did not examine this deed. The officers of the bank told her they had it, and that was true. Just what she would have discovered from examining the records in the register of deeds' office is not made to appear, for the deed had not been recorded, and had she examined the deed itself she would have discovered only what the bank told her, that it had a deed for the land. Appellants contend, however, that their possession gave notice to the plaintiff of their rights in the property. It may be remarked that the authorities generally are not in accord as to the effect of the continued possession by a grantor as notice of rights inconsistent with his grant. In 27 R. C. L. 727 *et seq.* (Vendor & Pur. § § 491, 492) and 66 C. J. 1173 (Vendor & Pur. § 1019) will be found statements with reference to both views. And see, also, 1 R. C. L. 751 and 2 C. J. 143.

In this state the decisions seem to be to the effect that continued possession by the grantor after conveyance made is not notice to a purchaser from the grantee. In *McNeil v. Jordan,* 28 Kan. 7, the

purchaser had no notice of the fraud, but had examined the records in the office of the register of deeds. In discussing the question of the effect of the grantors remaining in possession it was said:

"A purchaser from the grantee of the party in possession need not inquire whether such party has reserved any interest in the land conveyed. So far as the purchaser is concerned, the actual occupant's deed is conclusive upon that point. The object of the law in holding possession constructive notice is to protect the possessor from the acts of others who do not derive their title from him, not to protect him against his own acts, not to protect him against his own deed. Therefore, where a grantor executes and delivers a deed of conveyance to go upon record, he says to the world: 'Though I am yet in the possession of the premises conveyed, it is for a temporary purpose, without claim of right, and merely as a tenant at sufferance of my grantee.'" (p. 16.)

The matter was considered again in *Hockman v. Thuma*, 68 Kan. 519, 75 Pac. 486, and it was held:

"Possession of real estate by the grantor in a warranty deed does not impart notice to a purchaser from the grantee of secret equities existing in favor of the person occupying the land. The possession in such case by one who has conveyed the land indicates that he is holding the premises for a temporary purpose only, as a tenant at sufferance of his grantee." (Syl.)

And see *Balin v. Osoba*, 76 Kan. 234, 91 Pac. 57, where a somewhat similar situation was discussed.

While it is true that here appellee did not examine the record, if she had she would have discovered nothing, and she accepted the bank's statement it had a deed rather than examine the deed itself. We fail to see where she is at fault. It is conceded that neither a search of the records nor an examination of the deed would have disclosed the appellants' claimed parol reservation of an interest in the land. We are of the opinion that, under the circumstances, the continued possession of the real estate by the appellants was not notice to the appellee of their claimed, but undisclosed, reservation of an interest in the real estate.

It is also contended by appellant that the only consideration passing from the appellee to the bank was payment of a preëxisting debt and that appellee gave no present valuable consideration. Appellee held a certificate of deposit for moneys deposited by her in the bank, and it was cashed and the proceeds used. In Morse on Banks and Banking, p. 710, 6th ed., it is said:

"By custom, banks receive their own certificates of deposit as payment, and such custom will be judicially noticed by the courts. . ."

While it may be said that the relation of debtor and creditor

existed between the bank and the depositor, the same situation would have existed had the deposit been an open account and subject to check. Had such been the case and had she given a check on her account, we do not believe it could have been said that the consideration was payment of a preëxisting debt. We see no essential difference between using the certificate of deposit and drawing a check against the drawer's account. In so far as the notes are concerned, the proof went no further than that the notes might not be fully collected—a finding they were valueless would not have been sustained by the evidence. There was a failure to prove lack of consideration.

The third contention is that appellee should have produced proof other than her deed to establish *prima facie* her possession of the real estate. Plaintiff's petition alleges that she is the owner and in actual possession of the real estate. Defendants' answer denied that allegation, and alleged a claim to possession. It was held in *Stallard v. Stallard*, 133 Kan. 512, 300 Pac. 1096, that the right to possession follows fee-simple title to the real estate unless there is a contract or relationship of some kind that provides otherwise. In *Reitz v. Cooper*, 123 Kan. 755, 256 Pac. 813, it was said:

"In an action to quiet title under our statute (R. S. 60-1801), where plaintiff alleges that he is in possession, the filing of a cross petition by defendant in which he alleges he is in possession, praying that his title be quieted, confers jurisdiction on a court to determine the question of title as between the parties and to grant relief to the party entitled thereto, irrespective of whether plaintiff or defendant was in possession." (Syl. ¶ 1.)

Further, plaintiff's testimony was to the effect that she leased the land and put her tenant in possession of the land and he went to plowing. Both as a proposition of law and of fact the court was warranted in rendering judgment in plaintiff's favor.

The last contention is that the court erred in dismissing the bank as a party defendant, it being claimed that under the code a written instrument can always be reformed in an action in which it is sought to be enforced, citing *Stewart v. Falkenberg*, 82 Kan. 576, 109 Pac. 170, and *Casten v. Kreipe*, 125 Kan. 182, 264 Pac. 55. The cases cited do not determine the question before us. Here the plaintiff sought to quiet title to land, the defendants denied her title and sought to reform a deed to one not then a party to the suit, on account of the matters of which no allegation was made plaintiff had notice or knowledge at the time she acquired title, nor was

any such proved. If the plaintiff was correct in her contention and should prevail, then appellants had no right of reformation of the deed made by them to the bank. In the absence of notice or knowledge by the plaintiff that prevented her from having judgment in her favor, the court would have committed error had it reformed the deed as appellants sought. For aught the record shows, either by way of pleading or proof, plaintiff was a *bona fide* holder of the title to the real estate and entitled to the possession thereof, and in getting a judicial determination to that effect, she did not have to have her suit encumbered with claims of the defendants against other parties, the determination of which could not affect the result as to her.

And finally, it may be said that such disputes as there were in the testimony were resolved in favor of the plaintiff, and are not open for our consideration.

The judgment of the trial court is affirmed.